IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK HARSH, )
    Plaintiff, ) Civil Action No. 10-223 Erie
)
v. ) District Judge McLaughlin
)
MICHAEL BARONE, et al, ) Magistrate Judge Baxter
    Defendants. )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by Defendants Maxa and Shervine [ECF No. 34] be denied. The motion to dismiss filed by Defendants Barone, Bunting, Riskus, and Setnik [ECF No. 38] should be granted insofar as Defendant Barone should be dismissed from this action and denied in all other regards.

**II. REPORT**

  **A. Relevant Procedural History**

Plaintiff, a state inmate acting *pro se*, filed this civil rights action on September 7, 2010. Plaintiff alleges that Defendants violated his constitutional rights[1] in the delayed treatment and care of his broken arm. Plaintiff explains that as a result of an altercation with a fellow inmate

---

[1] In his complaint, Plaintiff claims that Defendants violated his constitutional rights under both the Eighth and Fourteenth Amendments. Where a due process claim is identical to an Eighth Amendment claim, the plaintiff must "bring the claim pursuant to the more explicit constitutional amendment." Ordonez v. Yost, 289 Fed.Appx 553, 555 (3d Cir. 2008) citing Graham v. Connor, 490 U.S. 386, 395 (1989). Accordingly, this Court need not conduct a separate due process analysis as to the identical factual allegations.

1

on October 11, 2008, his arm was broken. Plaintiff claims that an x-ray was not taken until October 14th, and he was not given any pain medications until October 27th. The morning following the altercation, Plaintiff was seen in the Medical Department by an unnamed nurse who could not determine whether his arm was broken. Plaintiff was given a bag of ice which security personnel made him empty into his cell sink. On October 14th, Plaintiff was examined by Dr. Maxa who wrapped the arm in a temporary cast. On October 20th, Plaintiff was examined by an outside orthopedic specialist, Dr. Bleday, who determined that the arm was broken. On October 27th, Plaintiff received pain medication (Tylenol) for the first time. On October 30th, Plaintiff underwent surgery to repair the broken arm. According to Plaintiff, the repair required eleven screws and a steel plate. In follow-up to the surgery, Plaintiff was seen by Dr. Maxa on October 30th and 31st, and November 7th, and seen by Dr. Bleday at his office on November 14th.

Further, Plaintiff alleges that following his surgery prison staff refused to provide him with a plastic cover for showering. The cast got wet on several occasions and "started to itch, stink and irritate," so Plaintiff tore the cast off. Subsequent check-ups and x-rays showed the arm had healed "with no ill-effects from prematurely removal of cast." The arm was re-cast, but the "prison had refused to take Plaintiff back to Dr. Bleday after arm had fully healed, so Plaintiff removed cast for final time." This Court liberally construes these factual allegations as raising four distinct claims under the Eighth Amendment: first, an initial delay in medical treatment and pain medications following the altercation; second, refusal to allow Plaintiff to use the ice pack and placement in RHU; third, failure to provide Plaintiff with protection for cast; and fourth, denial of follow-up medical care after his surgery.

Named as Defendants to this action are: Michael Barone, Superintendent; Nurse Bunting; Dr. Maxa; Lt. Setnik, Captain Riskus, Dr. Bleday, and Nurse Sherbine. Defendants

2

Barone, Bunting, Setnik and Riskus are employees of the Department of Corrections, are represented by the Attorney General, and will be referred to hereinafter as the "Department of Corrections Defendants." Defendants Maxa and Sherbine are represented by private counsel and will be referred to as the "Medical Defendants." The docket reflects that Defendant Dr. Bleday, the orthopedic surgeon who ultimately performed surgery on Plaintiff at Kane Community Hospital, has not been served with the Complaint. See ECF No. 10.

In response to the Complaint, both the Commonwealth Defendants and the Medical Defendants filed a motion to dismiss. Thereafter, Plaintiff filed an Amended Complaint [ECF No. 33] and the pending dispositive motions were dismissed as moot. The Commonwealth Defendants and the Medical Defendants have now filed motions to dismiss the Amended Complaint and Plaintiff has filed briefs in opposition to those pending motions. These issues are fully briefed and are ripe for disposition by this Court.

### B. Standards of Review

#### 1) *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992);

3

Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2) Motion to dismiss pursuant to 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit subsequently expounded on the Twombly/Iqbal/Phillips line of cases:

> To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.'
>
> * * *
>
> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to 'show' such an entitlement with its facts. As the Supreme Court instructed in Iqbal, '[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.' This

5

> 'plausibility' requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (emphasis added) (internal citations omitted).

### C. The Prison Litigation Reform Act

#### 1) The Exhaustion Requirement

Both sets of Defendants argue that this case should be dismissed for failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides that:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[2] The exhaustion requirement is not a

---

[2] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional

6

technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[3]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 2.  The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures,

---

requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[3]  There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

7

therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### 3. Analysis of Exhaustion

In his Amended Complaint, Plaintiff alleges that he has "exhausted full grievance procedure." ECF No. 33, page 6. Defendants argue that Plaintiff's own pleadings belie the fact that he did not fully exhaust his administrative remedies as to all of the claims raised or all the Defendants named in this litigation.

Attached to the Original Complaint[4] is documentation regarding grievance number 262408, beginning with the initial grievance and ending with the final appeal to the Secretary's Office. ECF No. 4, page 4. The initial grievance is dated February 18, 2009, and reads, in its entirety:

> I am grieving that I'm not being given adequate access to the orthopedic surgeon who operated on my arm. To this day it still pops when I twist my arm. I never did see the Dr. fur [sic] follow-up once the healing period ended. Not to mention I was forced to wait 18 days before I was taken to the hospital for surgery. Needless to say, the grievance filed in that case "mysteriously" disappeared.

Id. This grievance was fully exhausted through all levels of review. So then, Plaintiff has exhausted his claim regarding the denial of post-surgical medical care.[5]

In support of their argument for dismissal, Defendants only cite Plaintiff's pleadings and do not provide any evidence in support of their argument that Plaintiff's claims are not exhausted. The case law is clear that the failure to exhaust must be asserted and proven by the defendants and it is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. at 217 ("...failure to exhaust is an affirmative defense under the PLRA, and … inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Here, the failure to exhaust cannot provide a basis for the dismissal of this case at this initial stage of the proceedings as Defendants have not met their

---

[4] Because Plaintiff is a *pro se* litigant, this Court will review the Original and the Amended Complaint together for purposes of this motion.

[5] While the subject matter of this exhausted grievance revolves around the denial of follow-up care several months post-surgery, the grievance intimates that an earlier grievance about the initial delay in care and treatment "mysteriously disappeared." Interference with an inmate's attempts at exhaustion may impact the *availability* of the administrative remedy process within the meaning of 42 U.S.C. § 1997e. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."). See also McKinney v. Guthrie, 2009 WL 274159, at *1 (3d Cir. 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process.").

burden to show that Plaintiff has not exhausted. Plaintiff has provided evidence that he has exhausted at least one of the four Eighth Amendment claims alleged and it is not Plaintiff's burden to prove that he has exhausted any of his claims at this point in the litigation.[6] Ray.

It is impossible to determine whether Plaintiff has exhausted all the claims of this lawsuit, but the complaint itself indicates that Plaintiff did fully exhaust some grievance regarding his medical treatment. Construing all the allegations in favor of the *pro se* non-movant, this Court must recommend the denial of the motion to dismiss for failure to exhaust at this time. The exhaustion defense may be revisited upon a more fully developed factual record at some later time.

### D. *Respondeat Superior*

In their motion to dismiss, Commonwealth Defendants Barone, Setnik, and Riskus argue that they should all be dismissed from this case because Plaintiff has failed to sufficiently allege their personal involvement in the constitutional violations. ECF No. 39, page 7.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for

---

[6] It bears noting that the pleadings before this Court do not indicate whether it was physically possible for Plaintiff to write with a broken arm which may impact the availability of the administrative remedy procedures. See Berry v. Klem, 283 Fed.Appx 1, 4 (3d Cir. 2009) ("[Plaintiff] contended that the severity of his injuries prevented him from timely filing his initial grievance. [ ... and] also argued that the administrative grievance process was not available to him because he feared serious harm for filing a grievance. While that claim may not ultimately prevail, his allegations put in question the availability of the remedy.").

his or her own misconduct."); Oliver v. Beard, 358 Fed.Appx 297, 300 (3d Cir. 2009). It is well-settled law that *respondeat superior* is not an "appropriate theory" for asserting supervisory liability in a § 1983 civil rights action. See Monell v. Dep't of Social Serv., 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

In order for an individual defendant to be found liable in a civil rights action, the individual "must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). See also Rizzo v. Goode, 423 U.S. 362 (1976). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir. 2006) quoting Rode, 845 F.2d at 1207.

### 1) Defendant Barone

In both the Original and Amended Complaints, there are very few factual allegations against Defendant Barone. In particular, the Amended Complaint simply lists Barone as the Superintendent of SCI Forest at the time of the events complained of. As there are no allegations of personal involvement, Plaintiff has failed to state a claim against Defendant Barone as it is not

11

alleged that he played any "affirmative part" in the alleged constitutional violation. Cooper v. Beard, 2006 WL 3208783, at * 14 (E.D. Pa. 2006).

In his Opposition Brief, Plaintiff explains his theory of liability against Defendant Barone:

> Superintendent Barone is in fact legally responsible for the daily operation of SCI Forest, where the violations took place, and is responsible for the welfare of all the inmates at that Prison. By the Plaintiff filing his grievance, the Plaintiff placed the Defendant on notice that the Plaintiff was being mistreated for his serious medical needs. Defendant Barone simply turned a blind eye to the Plaintiff's grievance and did not properly investigate it.

ECF No. 44, page 4. Plaintiff's explanation of his claim against Defendant Barone only serves to clarify that he seeks to impose liability upon him in his capacity as a Superintendent of the facility at which Plaintiff was incarcerated.[7]

### 2) Defendants Riskus and Setnik

In the Amended Complaint[8], Plaintiff identifies Defendant Riskus as "the security captain at SCI Forest at the time," and Defendant Setnik as "the security Lt. at SCI Forest at the time"

---

[7] Non-medical prison officials, such as Defendant Superintendent Barone, are not "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. […] If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill, 372 F.3d at 236 quoting Durmer, 991 F.2d at 69. See also Foreman v. Bureau of Prisons, 2007 WL 108457, at *5 (3d Cir.). A non-medical supervisory official may only be held liable if there was "knowledge of 'malicious' and 'sadistic' medical mistreatment." Henderson v. Bussanich, 2006 WL 3761998, at *7 (M.D. Pa.), interpreting Spruill, 372 F.3d at 236-37.

In his capacity as Superintendent, Defendant Barone is not deliberately indifferent if he failed to respond to Plaintiff's medical complaints while he was under the care of medical professionals. See Spruill, 37 F.3d at 256. Defendant Barone's reliance on the opinion of medical professionals even as Plaintiff grieved his dissatisfaction with his medical care and treatment does not show that Barone possessed "knowledge of malicious or sadistic medical mistreatment" so as to impose liability upon him. See Henderson, 2006 WL 3761998. If an official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208; Cooper, 2006 WL 3208783, at * 14.

12

who "investigated the incident and subsequently issue[d] the write-up for the fight." ECF No. 33, page 5. Plaintiff alleges that security officers were responsible for taking the ice pack away from him (see id. at page 4) and for the failure to provide any shower protection for the cast (id. at page 5).

In his Opposition Brief, Plaintiff explains:

> The Defendants in this case gave the Plaintiff a handful of ice and then told the Plaintiff to put his broken arm in the sink with the ice – this is absurd. The Defendants Riskus and Setnik were surely deliberately indifferent to the Plaintiff's serious medical needs. The Defendants Captain Riskus and Lieutenant Setnik are Department of Corrections employees and at the time responsible for everything that goes on and happens on their shift; they are surely to be held liable/negligent in their supervisory capacities for violating the Plaintiff's right to proper medical care.

ECF No. 44, page 3.

While these allegations are not a model of clarity, they are sufficient at this early stage of the proceedings to survive a motion to dismiss. These factual allegations that Riskus and Setnik took the ice pack away from Plaintiff shortly after his arm was broken and denied him assistance in keeping his cast protected from water state a plausible claim for relief. Pleading these claims is far different from proving them which Plaintiff will have to do in the event this case goes to trial.

### 3) Don Skunda

Plaintiff has named Don Skunda within the body of the Amended Complaint. Skunda was not named in the Original Complaint, was not listed as a Defendant in the caption of the Amended Complaint, and the Clerk of Courts has not officially added him as a party to this action.

---

[8] While the Original Complaint lists Riskus and Setnik as Defendants in the caption, no mention is made of either of them in the body of the pleading. See ECF No. 4.

13

The sole allegation against Skunda in the Amended Complaint identifies him as "the Health Care Administrator at SCI Forest at the time." ECF No. 33, page 5. This allegation is not sufficient to state a claim against Skunda even if this Court were to allow Plaintiff to amend[9] his complaint to further expand upon this sole factual allegation. See supra at footnote 7.

### E. Deliberate indifference

All Defendants move to dismiss arguing that Plaintiff has failed to state a claim of deliberate indifference under the Eighth Amendment.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also arise "... when a delay in or denial of requested medical treatment causes an inmate to suffer a lifelong handicap

---

[9] Federal Rule of Civil Procedure 15(a)(2) states that "the court should freely give leave when justice so requires." Id. "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure). An amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted. In re NAHC, Inc. Securities Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

or permanent loss." Peterson v. Achebe, 2007 WL 1381753, at * 3 (D.N.J. 2007) citing Lanzaro, 834 F.2d at 347.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer, 991 F.2d at 68, or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir.1977).

Here, Plaintiff's own complaints outline some of his medical care. So then, Defendants reason that Plaintiff has failed to state an Eighth Amendment claim because he clearly received medical care and his complaint revolves around the adequacy of the treatment. However, Defendants overlook the crux of Plaintiff's complaints – Plaintiff alleges that Defendants delayed his medical care and treatment. Deliberate indifference can be manifested by an

intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. See Durmer, 991 F.2d 64. Plaintiff's factual allegations in this regard are sufficient to state a plausible claim for relief under the Eighth Amendment. Accordingly, the motion to dismiss should be denied.[10]

### F. Punitive Damages

The Medical Defendants move for dismissal of Plaintiff's request for punitive damages.

Punitive damages may only be awarded in the context of § 1983 where the alleged conduct in question is proven to be motivated by evil motive or intent, or where it involves recklessness or callousness to the federally protected rights of others. Smith v. Wade, 461 U.S. 30, 36 (1983); Eichenlaub v. Township of Indiana, 214 Fed.Appx 218, 223 (3d Cir. 2007). Plaintiff's allegation that he was denied pain medications for a broken arm from October 11th through October 27th rises to the level of callousness sufficient to support a claim for punitive damages. The motion to dismiss should be denied in this regard.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion to dismiss filed by Defendants Maxa and Shervine [ECF No. 34] be denied. The motion to dismiss filed by Defendants Barone, Bunting, Riskus, and Setnik [ECF No. 38] should be granted insofar as Defendant Barone should be dismissed from this action and denied in all other regards.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within

---

[10] This Court does not read a medical malpractice claim in either the Original or Amended Complaints and therefore, it is not necessary for Plaintiff to file a certificate of merit.

fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

        /s/ Susan Paradise Baxter
        SUSAN PARADISE BAXTER
        United States Magistrate Judge

Dated: November 18, 2011